**SO ORDERED.**

**SIGNED this 07 day of April, 2009.**

_____
**Randy D. Doub**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF NORTH CAROLINA
### WILSON DIVISION

IN RE:                                                              CASE NO.

WILLIAM B. JOHNSON,                                   08-02207-8-RDD

       DEBTOR

### ORDER DENYING DEBTOR'S OBJECTION TO KEYSTONE
### EQUIPMENT FINANCE CORPORATION'S CLAIM

Pending before the Court is the Debtor's Objection to Keystone Equipment Finance Corporation's Claim (the "Claim Objection") filed by William B. Johnson (the "Debtor") and the Response of Keystone Equipment Finance Corp. to Debtor's Objection to Claim and the Brief of Keystone Equipment Finance Corp. in Opposition to Debtor's Objection to Claim (collectively, the "Response") filed by Keystone Equipment Finance Corp. ("Keystone"). A hearing was held on January 27, 2009 in Wilson, North Carolina.

The issues before the court are (1) whether Keystone holds a purchase money security interest in certain collateral of the Debtor which was purchased within one year of the Debtor's filing and (2) should the court determine that Keystone holds a purchase money security interest in certain collateral of the Debtor, does the hanging paragraph in Section 1325(a) prevent the Debtor from cramming down Keystone's secured claim under 11 U.S.C. § 506?

**BACKGROUND**

On April 1, 2008 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 13 of Title 11 of the United States Code (the "Bankruptcy Code."). The Debtor listed Keystone as a "Bus[]iness Equipment Finance Provider" on Schedule D with a claim in the amount of Seventy-Six Thousand Five Hundred Dollars ($76,500.00). The Debtor asserts in its Claim Objection that the collateral securing Keystone's claim is valued at Fifty-Two Thousand Dollars ($52,000.00).

On June 12, 2008, the Minutes of the 341 Meeting and Motion for Confirmation of the Debtor's Chapter 13 Plan were filed by Robert J. Browning (the "Trustee"). The Debtor and the Trustee proposed to bifurcate and cramdown Keystone's claim, treating Forty-Seven Thousand Dollars ($47,000.00) as secured based on the Debtor's valuation of Keystone's collateral. The remaining Twenty-Nine Thousand Five Hundred Dollars ($29,500.00) of the claim was to be treated as unsecured. The Debtor proposed to pay Keystone interest of Seven and Twenty-Five One Hundredths Percent (7.25%) over the life of the plan.

On July 7, 2008, Keystone filed its Objection to the Chapter 13 Plan and Objection to Valuation of Collateral. Subsequently on August 4, 2008, Keystone filed a proof of claim asserting that it held a secured claim in the amount of Seventy-Seven Thousand Nine Hundred Seventy-One Dollars and Eighty-Four Cents ($77,971.84)(referred to herein as "Claim No. 13"). Keystone asserts the value of the collateral, including a log feller buncher ("Buncher"), a 1989 Kenworth Sleeper Truck, and a 1994 Kent Log Trailer (collectively, the "Collateral"), is Ninety-Eight Thousand Seven Hundred Thirty-Seven Dollars and Fifty Cents ($98,737.50).

On August 27, 2008, the Debtor filed its Claim Objection asserting that the Collateral had a value of Fifty-Five Thousand Dollars ($55,000.00) as of the Petition Date.  Keystone filed its Response objecting to the Debtor's valuation and asserting that pursuant to the hanging paragraph in 11 U.S.C. § 1325(a), its claim cannot be crammed down under 11 U.S.C. § 506. Keystone alleges that it has a properly perfected purchase money security interest in the Buncher and that its interest was obtained within one year of the Petition Date.

## DISCUSSION

Congress, as part of the amendments to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, made sweeping changes and additions to the confirmation requirements for a Chapter 13 plan.  *See* 11 U.S.C. § 1325(a).  One of those changes included a new provision, now commonly referred to as the "hanging paragraph."  That paragraph provides:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject to the claim, the debt was incurred within the 910-day preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

Section 506 of the Bankruptcy Code allows a debtor to bifurcate a secured creditor's claim.  Under Section 506, a creditor's claim is secured only to the extent of the value of the collateral; any remaining balance of the claim is treated as unsecured.  Section 506 essentially allows a debtor to cramdown the creditor's secured claim to the value of the collateral.

The addition of the hanging paragraph in Section 1325(a) prevents a debtor's right to cramdown under Section 506 in two situations.  The first scenario is where a debtor incurred a purchase money security debt for a motor vehicle acquired for the personal use of the debtor

3

within the 910-day period preceding the filing of the bankruptcy case.  *Wells Fargo Financial North Carolina 1, Inc. v. Price*, No. 5:07-CV-133-BR, 2007 Westlaw 5297071 (E.D.N.C. Nov. 14, 2007).  The second scenario focuses on the situation where a debtor incurs a purchase money security debt within one year of the petition which is secured by collateral of "any other thing of value." *See In re Ellegood*, 362 B.R. 696 (Bankr. E.D. Va. 2007); *In re Hickey*, 370 B.R. 219 (Bankr. Neb. 2007); *In re Curtis*, 345 B.R. 756 (Bankr. D. Utah 2006); *In re Parish*, 2006 Bankr. Lexis 1205 (No. 05-BK-15702-JAF) (Bankr. M.D. Fl. 2006).

The first scenario does not apply in this case as the Buncher[1] is neither a motor vehicle nor was it purchased for personal use.  Keystone argues the second scenario is applicable and prohibits the Debtor from cramming down a portion of its claim on the basis that its purchase money[2] was used to purchase the Buncher, within the year prior to the Petition Date, and that such debt is evidenced by a security agreement and properly filed UCC-1.  The Debtor alleges that Keystone does not have a purchase money security interest in the Buncher.  The Debtor asserts that Keystone entered into a refinance transaction with Debtor, not a purchase money agreement. Without a purchase money security interest, the Debtor asserts that Keystone's claim can be crammed down to the value of the Collateral under Section 506.

---

[1] As part of the Collateral, the Debtor provided Keystone a security interest in a 1989 Kenworth Sleeper Truck and a 1994 Kent Log Trailer. These items were used as part of the Debtor's logging business and not for his personal use.  However, Keystone admits that it did not provide the Debtor purchase money for the additional collateral. The Court notes that in a transaction such as this one where consumer goods are not at issue, a purchase money security interest does not lose its purchase money status even if collateral that is not purchase money collateral is used to secure the purchase money obligation.  N.C.G.S. § 25-9-103(f).

[2] Keystone's brief submitted in response to the Claim Objection and counsel's oral argument presumes that its interest in the Collateral must be a purchase money security interest in order for it to avoid the cramming down of its Claim under the hanging paragraph. The Debtor does not dispute this requirement.

In order to determine if Keystone holds a purchase money security interest in the Buncher, the Court looks to state law, more specifically, the Uniform Commercial Code as adopted by North Carolina.  N.C.G.S. § 25-9-103(a)(1) defines purchase money collateral as the goods that secure a purchase money obligation incurred with respect to the collateral.  Purchase money obligation is defined in (a)(2) as the obligation incurred as all or part of the price of the collateral to enable the debtor to acquire use or rights to the collateral if the value is in fact used.

 North Carolina General Statute § 25-3-103(b) provides that a purchase money security interest in goods is "[a] security interest in goods is a purchase-money security interest: (1) [t]o the extent that the goods are purchase-money collateral with respect to that security interest."

At the hearing, the Debtor testified that he paid John Woodie Enterprises, Inc. ("JWE") a down payment of Five Thousand Dollars ($5,000.00) in December 2006 and took delivery of the Buncher in January 2007.  At the same time as the Debtor purchased the Buncher, he also purchased a Caterpillar 525 Skidder (the "Skidder") and a Prentice Log Loader (the "Loader, collectively referred to herein with the Buncher and Skidder as the "Logging Equipment").  The Skidder and Loader was also delivered in January 2007.

The Debtor stated the approximate cost of the Skidder was Sixty-Six Thousand Dollars ($66,000.00); the cost of the Buncher was approximately Eighty-Two Thousand Dollars ($82,000.00), and the cost of the Loader was Fifty-Two Thousand Dollars ($52,000.00).  The deposit paid by the Debtor in December 2006 was applied as a down payment on the Logging Equipment.

The Debtor testified that for eight months he made payments to JWE in the amount of Two Thousand Dollars ($2,000.00).  Mr. Johnson testified that he did not recall signing any

documents specifically related to JWE financing the sale of the equipment.  However, over the eight months, Mr. Johnson executed certain financing documents from Key Equipment Finance Inc., Keystone, and Premier Finance for each individual piece of Logging Equipment.  Even though other companies were later involved in the transaction, the insurance policy for the Logging Equipment lists JWE as the loss-payee.

Mr. Johnson testified that in February 2007, he signed certain documents from Premier Finance in connection with its financing of the Loader.  Subsequently, in May 2007, Mr. Johnson executed certain documents in favor of Key Equipment Finance Inc. in connection with the Skidder.  Mr. Johnson stated that he was not current with the debt to Key Equipment Finance and that he was in the process of returning the Skidder.

Lastly, Mr. Johnson testified that in August of 2007, an employee of JWE visited him on the jobsite requesting that he sign certain documents relating to the Buncher.  Mr. Johnson stated he believed those documents were to refinance the balance due on the Buncher to JWE under their agreement.   He testified that he signed the documents without carefully reviewing them.

The Debtor stated that he believed that JWE financed his original transaction and that his monthly payments of Two Thousand Dollars ($2,000.00) were paid to JWE towards the balance due.  However, the Debtor failed to provide any financing documents such as a note or security agreement for the benefit of JWE.  Furthermore, the Debtor did not present any evidence, such as a bill of sale to provide that he was in fact the owner of the Logging Equipment upon its delivery in January 2007.

Keystone alleges that JWE leased the Logging Equipment to the Debtor while JWE sought viable financing options for Mr. Johnson.  Counsel for Keystone introduced an affidavit

of John Woodie, admitted solely for the purpose of impeaching of the Debtor's testimony. Woodie averred that JWE leased the Buncher to the Debtor and that the monthly lease payments were used as part of the down payment to Keystone, and other financiers, once the transactions were finalized in 2007.

Furthermore, attached to the Proof of Claim, Keystone provided a copy of a Commercial Promissory Note, signed by the Debtor on August 10, 2007, in the amount of Seventy-Six Thousand Five Hundred Dollars ($76,500.00) to be paid in Forty-Eight (48) equal monthly installments of Two Thousand Two Hundred Ninety-Nine Dollars and Fifty-Nine Cents ($2,299.59) (the "Note"). The Note reflects that an initial down payment of Four Thousand Five Hundred Ninety-Nine Dollars and Eighteen Cents ($4,599.18) was received by Keystone. The Debtor did not dispute his signature on the Note. In addition, Keystone provided the Court with a copy of a Security Agreement signed by the Debtor evidencing the underlying Note and granting Keystone a security interest in the Collateral. The Debtor does not dispute that Keystone holds a security interest in the Collateral and that the documents were executed on August 10, 2007.

Keystone also presented the Court with a copy of the Bill of Sale dated August 9, 2007 from JWE to the Debtor. The Bill of Sale provides the sale price of the Buncher was Eighty-Two Thousand Dollars ($82,000.00). Mr. Johnson acknowledges his signature on this document.

Based on the foregoing, the Court finds that pursuant to N.C.G.S. § 25-9-103, Keystone holds a purchase money security interest in the Buncher. The Debtor does not dispute that he executed the Note, Bill of Sale, or other documents signed in August 2007. The Debtor has

failed to provide any contradictory documentary evidence that JWE sold him the Buncher prior

to the execution of the agreements with Keystone.  The Bill of Sale in the amount of Eighty-Two

Thousand Dollars ($82,000.00) is consistent with the terms of the Note.  Mr. Johnson testified

that he was making one payment to JWE for all three pieces of equipment, thus resulting in a

pro-rata amount being distributed to each of the three lenders at the time the Debtor executed the

financing documents.  The monthly payments are also consistent with Keystone's and JWE's

contention that the equipment was being leased until JWE located financing for the Debtor.

Wherefore, based on the Court's finding that Keystone holds a  purchase money security interest

in the Buncher, Keystone also satisfies the first requirement of the hanging paragraph.

As to the second requirement, the parties do not dispute that the Buncher would be

considered "any other thing of value."  The original dispute between the parties focused on the

actual value of the Buncher. Therefore, the Court finds based on the parties admissions that the

Buncher is "any other thing of value;" thus, satisfying the second requirement of the hanging

paragraph.

Lastly, the evidence presented to the Court reflects that the Debtor executed the Note and

Security Agreement on August 10, 2007.  That date establishes the date of Keystone's purchase

money security interest and it is within one year of the Petition Date, April 1, 2008. As such,

Keystone has satisfied the last requirement set forth in the hanging paragraph.

Based on the fact that Keystone holds a purchase money security interest in the Buncher

and that the remaining requirements of the hanging paragraph of Section 1325(a) have been

satisfied, the Court finds that the limitations set forth in the hanging paragraph apply to the

Debtor and the Debtor is prevented from cramming down Keystone's secured claim to the value

of the Collateral under 11 U.S.C. § 506. The Debtor's Objection to Keystone's Proof of Claim is

**DENIED** and Keystone's claim is secured in the amount of Claim No. 13.[3]

      **SO ORDERED**.

**END OF DOCUMENT**

---

[3]Based on the Court's finding that the hanging paragraph in Section 1325(a) applies and that Keystone's claim may not be crammed down, the Court declines to consider the valuation arguments presented by counsel. The issue of valuation of the Buncher is not relevant based on the facts in this case.